# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 2620 | **DATE** | 2/26/2003 |
| **CASE TITLE** | Rose vs. Garbs, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment [66-1] is granted in part and denied in part. The Court dismisses Burkes, Davis, Goines, Nance, Ware and Young as defendants. The case will proceed against Garbs and Romero only. Status hearing is set for 3/13/03 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 4 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | FEB 27 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | docketing deputy initials | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | 2/26/2003 | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| MD | courtroom deputy's initials | 03 FEB 27 AM 8: 09 | MD | | |
| | | FILED TO | mailing deputy initials | | |
| | | Date/time received in central Clerk's Office | | | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|                                          |   |                                  |
|------------------------------------------|---|----------------------------------|
| **SPENCER ELLIS ROSE #A-91580**          | ) |                                  |
|                                          | ) |                                  |
| **Plaintiff,**                           | ) |                                  |
|                                          | ) |                                  |
| **vs.**                                  | ) | **No. 99 C 2620**                |
|                                          | ) | **Judge Joan H. Lefkow**         |
| **LEONARD GARBS, et al.,**               | ) |                                  |
|                                          | ) |                                  |
| **Defendants.**                          | ) |                                  |

DOCKETED
FEB 2 7 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Spencer Ellis Rose ("Rose"), a prisoner incarcerated with the Illinois Department of Corrections, claims pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, that defendants, staff at the Joliet Correctional Center, acted with deliberate indifference when they failed to protect him from a known harm, his cell mate, and, thus, violated his Eighth Amendment right to be free from cruel and unusual punishment. Before this court is defendants' motion for summary judgment. Jurisdiction is properly invoked under 42 U.S.C. § 1343(a). For the reasons set forth below, the court grants in part and denies in part the motion.

### SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The



party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986). In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia* v. *Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver* v. *Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS STATED IN A LIGHT MOST FAVORABLE TO PLAINTIFF

### A.    Background

At all relevant times, Rose was incarcerated at the Joliet Correctional Center. Defendants were correctional staff at Joliet Correctional Center, namely, William Burkes ("Burkes"), a Correctional Lieutenant, Terrence L. Davis ("Davis"), a Correctional Officer, Leonard Garbs ("Garbs"), a Correctional Lieutenant, Terrell Goines ("Goines"), a Correctional Sergeant, Samuel Nance ("Nance"), a Correctional Lieutenant, Gilberto Romero ("Romero"), a Correctional Superintendent, Keenan Young ("Young"), a Correctional Sergeant, and Eric Ware ("Ware"), a Correctional Sergeant.

At the Joliet Correctional Center, the parties generally agree that inmates often use fighting with their cell mates as a manipulative way to get transferred to a different cell, either to a single cell or a cell with another preferable inmate. (Def. L.R. 56.1 ¶ 15.) The decision to

2

transfer an inmate to a different cell rests with staff. (*Id.* ¶ 16.) Lieutenants or higher ranking correctional staff such as Burkes, Garbs, Nance and Romero had the authority to transfer inmates to different cells. (*Id.*) Correctional Officers and Sergeants such as Davis, Goines, Ware and Young had no authority to transfer inmates to different cells. (*Id.*; Def. L.R. 56.1 ¶ 17.)

## B.    Events leading to the instant law suit

On September 18, 1997, Rose arrived at the Joliet Correctional Center from the Pontiac Correctional Center. He was placed in the West Segregation Unit, which contains inmates who are more aggressive than the general prison population or have difficulty abiding by the facility rules. (Pl. L.R. 56.1 ¶ 2; Romero Dep. at 52; Young Dep. at 30; Rose Dep. at 16.) Rose indicated to Garbs that he wanted to be celled alone (Def. L.R. 56.1 ¶ 14) and there were other open beds and vacant cells in the West Segregation Unit during the relevant time period (Pl. L.R. 56.1 ¶ 13). Rose, however, was placed in cell number 432 with another inmate, Donrell Shufford ("Shufford"). (*Id.*) Shufford, who at 18 years of age stood at 5'10", was over 15 years younger and 3 inches taller than Rose, who at 41 years of age stood at 5'7". Rose, however, weighed 215 lbs., which was 65 lbs. more than Shufford, who weighed 150 lbs.

Shufford had been moved to cell 432 two weeks prior to Rose's arrival because of an altercation with his former cell mate, James Coats ("Coats"). (*Id.* ¶ 3.) In an incident report concerning the altercation, Shufford and Coats had been "pushing and shoving each other." (Pl. Ex. 3.) Coats, however, attested that Shufford had threatened Coats, called him "vulgar names, and tried to act upon the threats of what he said he [would] do to" Coats. (Pl. Ex. 6, Coats Aff.) Further, Coats attested that, prior to the altercation, he reported Shufford's behavior to Goines

and other correctional staff but they told him that Shufford and he would have to work out their differences. (*Id.*)

Although Rose had no prior dealings with and had never spoken to Shufford prior to when they were celled together, Shufford immediately began threatening Rose with bodily harm. (Pl. L.R. 56.1 ¶ 6.) Shufford continuously told Rose that he was going to "kick [Rose's] ass" and "taunted" Rose by shaking his fist in front of Rose's face. (*Id.* ¶ 7; Rose Dep. at 25.) Shufford would also shout from the cell to his fellow inmates that he did not want Rose in his cell, that he did not like Rose and "how he was going to beat this old man's ass." (Rose Dep. at 28.)

Despite Shufford's threats, Rose did not place Shufford as an enemy on his Illinois Department of Corrections enemies list, which is a document kept in the inmate's master file that notifies correctional staff to keep certain inmates separated from certain others. (Def. L.R. 56. 1 ¶ 6; Rose Dep. at 20; Def. Mem. at 2 n.1.) Further, Rose did not file a grievance on an emergency basis because the grievance procedure could take up to three days, which Rose thought was too long. (Def. L.R. 56.1. ¶ 7; Rose Dep. at 38.) Rose also did not ask to speak with a counselor, volunteer, medical staff or clergy member. (Def. L.R. 56.1 ¶ 7.)

Rose did draft two letters, one to Garbs and one to Romero, on September 19, 1997. (Pl. L.R. 56.1 ¶ 10.) In these letters, Rose stated that he was in a cell with an individual who repeatedly threatened him, he was in fear for his life and he was requesting to be transferred to another cell. (*Id.*; Pl. Ex. 9.)[1] Rose gave both letters to Garbs and instructed Garbs to deliver his

---

[1]Specifically, Rose's hand-written letter to Romero, dated September 19, 1997, states:

Dear Supt Romero,

    I need to know if you are able to help me. I'm in a cell with a younger inmate who is very

(continued...)

4

letter to Romero. (Pl. L.R. 56.1 ¶ 11.) Although Garbs' delivering the letter to Romero would be "circumventing procedure," Romero acknowledged that he sometimes accepted mail from inmates via staff. (Def. Resp. to Pl. L.R. 56.1 ¶ 12.) Both Garbs and Romero, however, do not recall receiving the letters from Rose. (Garbs Dep. at 90; Romero Dep. at 11.) Nevertheless, Romero testified that had he received Rose's letter, he would have investigated the situation himself to determine whether to separate the inmates. (Def. Resp. to Pl. L.R. 56.1 ¶ 45, citing Romero Dep. at 12-13.)

Rose also spoke with the correctional staff, complaining that Shufford wanted "to beat [him] up or kill [him]" and requesting to be moved. (Pl. L.R. 56.1 ¶ 19.) In response to his complaints and requests to transfer, Garbs stated, "You'll be all right. This is Joliet. I'm not moving you. And I think Shufford even threatened [me]." (Rose Dep. at 32.) Young laughed, made jokes and said, "Do what [you] have to do. This is Joliet." (Pl. L.R. 56.1 ¶ 19, citing Rose

---

[1](...continued)

violent towards me and he has threaten [*sic*] me since I was put in here by Lt Garbs, Sgt Young and a Sgt. Goiens [*sic*].

    I have asked each one of these officers to move me! I have gotten a run-around, even when the Lt Garbs saw and heard this inmate say he was going to beat my ass in front of them, and I was willing to move. These officers would not move me to one of the many cells that are open on this gallery.

    I hope to hear from you soon on this matter. I fear for my life, this inmate is bigger and younger than myself.

                     Respectfully,
                     /s/Spencer Rose
                     W-Seg 432

c.c.
Personal File

(Pl. Ex. 9.) The parties dispute the authenticity of the letter, namely, whether Rose wrote the letter prior to the physical altercation.

Neither party offers a copy of the letter Rose wrote to Garbs.

Dep. at 36.) Similarly, Goines stated, "This is Joliet. We're not going to move you. Do what you got to do." (Pl. L.R. 56.1 ¶ 21.) Burkes responded by shadow-boxing with Shufford and telling Shufford to leave Rose alone. (*Id.* ¶ 20; Rose Dep. at 75.) Burkes also told Rose that Rose would be all right and that Shufford was not going to bother him. (Rose Dep. at 75.) Furthermore, although Nance and Ware were not assigned to the West Segregation Unit, when they walked by Rose's cell at some unspecified point, Rose stopped them and complained to them. (*Id.* at 40.) Nance and Ware responded "We can't move you. We're not going to move you." (*Id.*) These defendants either deny or cannot remember if Rose complained to them or asked for a cell transfer. (Garbs Dep. at 58; Goines Dep. at 9, 11-12; Nance Aff. ¶ 6; Ware Dep. at 6, 12-13; Young Dep. at 7-8, 26.)

Davis, however, acknowledged that Rose complained that he did not want to share a cell with a "gangbanger." (Davis Dep. at 41.) Davis responded to Rose that he did not have the authority to move Rose out of the cell but that he would contact a lieutenant. (*Id.*; Rose Dep. at 74.) There is no evidence that Davis spoke with a lieutenant.

On September 21, 1997, Correctional Officer Samuel Buchanan, Sr. ("Buchanan"), a non-defendant, and Garbs personally witnessed Shufford verbally threatening Rose. (Pl. L.R. 56.1 ¶ 23.)[2] Shufford shouted threats at Rose for 15 to 20 minutes. (*Id.* ¶ 24.) Shufford then yelled at Garbs and demanded that Rose be moved out of the cell. Rose also asked Garbs to be moved out of the cell because he feared for his safety. (*Id.* ¶ 25.) Garbs responded by telling

---

[2]Rose also asserts that Goines was present but the evidence does not support this fact. (Pl. L.R. 56.1 ¶¶ 23-24.) Rose's deposition testimony does not show Goines was present. (Rose Dep. at 71-72, discussing only Garb's presence.) Buchanan was not 100% sure Goines was present. (Buchanan Dep. at 14-15, 17, 41, 44, stating that it was a "stab in the dark" as to whether Goines was assigned that day and subsequently stating that he would notify his supervisor, Goines, if he observed an incident or that he was "constrained to believe that the sergeant had to have been present[.]")

Rose that "You'll be all right. You're a big guy[,] you can handle your own self." (*Id.* ¶ 26, citing Rose Dep. at 72.)

Based on this verbal altercation, Buchanan testified that in his "experience of almost eight and a half years as a correctional officer, when I've seen things happen like [the verbal altercation] it usually led to a fight" and that he really thought "that Shufford was going to kick [Rose's] butt." (Pl. L.R. 56.1 ¶ 28, citing Buchanan Dep. at 15, 18.) Buchanan, however, did not write an incident report. (Pl. L.R. 56.1 ¶ 29, citing Buchanan Dep. at 27.) Buchanan presumed that Garbs, a superior officer, would either tell Buchanan to write a report or handle the matter himself. (*Id.*) There is no evidence of an incident report written by either Garbs or Buchanan concerning the verbal altercation.

On September 22, 1997, Rose was sitting on the bottom bed of the two-person bunk-bed in his cell. Shufford was standing by the bars. Shufford kicked Rose on the right side of his face, hitting Rose's eye, ear and jaw and forcing Rose's glasses to fly across the cell. (Rose Dep. at 42-43.) Rose fell to the floor but then managed to stand up. (*Id.* at 43-44.) Shufford continued to assault Rose with his fists. (*Id.* at 44.) Rose tried to get out of the way and protect himself with his hands. (*Id.*) Rose somehow managed to pin Shufford to the floor and put his hands around Shufford's throat. (*Id.* at 45.) Rose testified that he did this to stop Shufford from swinging at and hitting him. (*Id.*)

At that same time, Ware and Nance, who were not assigned to the West Segregation Unit but were on detail, were walking through the Unit. They heard the altercation and came over to the cell. Burkes and Davis also came over. (*Id.* at 48.) These defendants saw Rose on top of Shufford with his hands around Shufford's throat. (Def. L.R. 56.1 ¶ 11.) These defendants

7

ordered Rose to release Shufford and Rose eventually complied. Shufford, however, hit Rose in the jaw and Rose again tried to restrain Shufford. Rose finally let go of Shufford after Shufford told Rose that he would not assault Rose again. (Rose Dep. at 48.) As a result of this fight, Rose received medical attention. Rose suffered and continues to suffer from pain and blurry vision in his right eye, lower back pain, neck pain and frequent headaches. (Pl. Resp. to Def. L.R. 56.1 ¶ 12, citing Rose Dep. at 55-56, 59, 66.)

After the fight, Rose and Shufford were separated and Rose was temporarily celled alone. (Def. L.R. 56.1 ¶ 13.) Subsequently, Rose was placed with an inmate whom Rose had requested as a cell mate. (*Id.* ¶ 14.) On or about April 20, 1999, Rose filed this instant law suit against defendants.

# DISCUSSION[3]

In order to prevail on a § 1983[4] claim, a plaintiff must establish that the defendant

deprived him of a constitutional or federal right and that the defendant acted under color of state

law. *Brokaw* v. *Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000) (internal citations omitted).

Rose claims that defendants, while acting under color of state law, violated his constitutional

right under the Eighth Amendment to be protected against infliction of "cruel and unusual

punishment." U.S. CONST. AMEND. VIII; *Reed* v. *McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

The Eighth Amendment "places restraint on prison officials, who may not, for example, use

excessive force against prisoners . . . [but] also imposes duties on these officials, who must

---

[3]Defendants argue for the first time in their reply brief the affirmative defense that Rose failed to exhaust his administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted"); *Dixon* v. *Page et al.*, 291 F.3d 485, 488 (7th Cir. 2002) ("Exhaustion of administrative remedies, as required by § 1997e, is a condition precedent to suit."); *Massey* v. *Helman*, 196 F.3d 727, 735 (7th Cir. 1999) ("A prisoner's failure to exhaust administrative remedies before filing a claim constitutes an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure. . . . Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense.") (internal citations omitted).

Defendants' argument is both untimely and without merit. *Fenster* v. *Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002) ("An argument introduced for the first time in a reply brief is waived."). Defendants attach a "Grievance Officer's Report," dated November 6, 1997, to their reply brief (Def. Reply Ex. A) and Rose attaches minutes from an Administrative Review Board meeting on March 19, 1998 to his response brief (Pl. Ex. 13). Both documents show that Rose grieved that the correctional staff failed to respond to his complaints about Shufford's threats and his requests to be transferred to another cell.

[4]Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Section 1983 "is not itself a font for substantive rights; instead, it acts as an instrument for vindicating federal rights conferred elsewhere." *Spiegel* v. *Rabinovitz*, 121 F.3d 251, 254 (7th Cir. 1997).

provide humane conditions of confinement . . . and must take reasonable measures to guarantee the safety of the inmates." *Farmer* v. *Brennan*, 511 U.S. 825, 832-33 (1994) (internal citations and quotations omitted). Here, Rose argues that defendants did not take reasonable measures to guarantee his health and safety by making him share a cell with Shufford and failing to respond to his requests to be separated.

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *See id.* at 833 (internal citations and quotations omitted). "While every injury suffered by one prisoner at the hands of another does not constitute a violation of the Eighth Amendment prohibition on 'cruel and unusual punishments,' if deliberate indifference by prison officials effectively condones the attack by allowing it to happen, those officials can be held liable to the injured victim." *Haley* v. *Gross*, 86 F.3d 630, 640 (7th Cir. 1996). The standard for a deliberate indifference claim in the prison context contains both an objective and subjective element. *See Walker* v. *Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002). First, "the danger to the inmate must be objectively serious, posing a substantial risk of serious harm." *Haley*, 86 F.3d at 640-41. Second, the prison official must have a sufficiently culpable state of mind, one of deliberate indifference to the inmate's health or safety. *Id.* The state of mind required for deliberate indifference is as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference.

*Id.* at 641, quoting *Farmer*, 511 U.S. at 837; *see also Reed*, 178 F.3d at 854 (The plaintiff "must also show that the defendants acted with reckless disregard toward the serious need by inaction or woefully inadequate action.") (internal citations and quotations omitted).

## A. The objective element

Rose argues that Shufford objectively posed a substantial risk of serious harm to him after Shufford continuously threatened him. Rose relies heavily on *Haley*, 86 F.3d at 637, where the plaintiff shared a cell with a mentally disturbed inmate who threatened and intimidated the plaintiff and eventually started a fire in the cell, killing himself and severely burning the plaintiff. Both the plaintiff and the inmate had previously requested to be separated from each other several times during a four or five day period and several prison officials had witnessed a heated argument between the plaintiff and the inmate the night of the fire. *Id.*

In *Haley*, the court did not specifically address whether the inmate objectively posed a substantial risk of serious harm to the plaintiff. Even so, the facts in *Haley* suggest that the objective element was met, given that the inmate had a well-known history of mental illness, had a prior history of attempting to burn down his sister's house, had made specific threats of violence against the plaintiff, had threatened the correctional staff that he would burn the cell down, and was on "deadlock protective custody status," which meant his (and the plaintiff's) cell could only be manually opened. The situation here was not as extreme, certainly. But Rose proffers that Shufford's previous cell mate, Coats, complained about Shufford's threats but Goines and other correctional staff disregarded his complaints until a physical altercation occurred. When Rose was placed with Shufford, Shufford behaved the same way as he had with Coats, making verbal and physical threats towards Rose, and engaging in a verbal altercation in front of Garbs. If a trier of fact viewed the credibility of Coats and Rose favorably, particularly the Coats incident, a trier of fact could reasonably find that Shufford objectively posed a substantial risk of serious harm to Rose. As such, the court finds that there is a genuine issue of material fact concerning the objective element.

**B.    The subjective element**

With respect to "the actual knowledge prong," *Haley*, 86 F.3d at 641, the parties dispute whether defendants had the requisite state of mind to be liable for failure to protect Rose. Defendants argue that they did not have actual knowledge or "notice" because Rose did not have any prior conflicts with Shufford, did not place Shufford on his enemies list, did not file a grievance, or speak with a counselor or medical or spiritual staff even though Shufford previously fought with his former cell mate and Rose complained to them about Shufford. Defendants rely on *Wilson v. Nunn*, No. 99 C 4981, 2002 WL 992649, at *3 (N.D. Ill. May 7, 2000), a case involving a physical altercation between two cell mates, where the court granted summary judgment in favor of the defendants-correctional officers. There, the court determined that the plaintiff failed to provide notice by not filing a grievance or by only generally discussing his fears with the defendants, and failed to show a serious harm, stated he was not physically injured after the altercation and was known to be more violent that his cell mate. Rose responds by urging this court to find that the facts in his case are more akin to *Haley, see* facts *supra* pages 10-11, rather than *Wilson*.

The court finds that the facts in this case with respect to Burkes, Davis, Goines, Nance, Ware and Young are more similar to the facts in *Wilson*, 2002 WL 992649, at *3, rather than *Haley*, 96 F.3d 642-43. As stated by the court in *Wilson*, an inmate's "prior involvement in altercations with other inmates is simply not enough" to provide notice. 2002 WL 992649, at *3. There is no additional evidence beyond Rose's general complaints to these defendants to show why these defendants would find that Shufford posed a threat to Rose. Moreover, even if Rose could show that these defendants were on notice, these defendants' actions, at the most, amount to negligence and not deliberate indifference. *See Luttrell* v. *Nickel*, 129 F.3d 933 (7th Cir. 1997)

(distinguished the facts in *Haley* and upholding the lower court's grant of summary judgment in favor of the defendant-correctional officer where the correctional officer did not "personally investigate" the mental state of the cell mate (who subsequently sexually assaulted the plaintiff), the defendant's "response to [the plaintiff's] request [for another cell mate] with laughter did not amount to deliberate indifference and the court quoted *Snipes* v. *DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Mere negligence or even gross negligence does not constitute deliberate indifference.")). As such, the court will dismiss Burkes, Davis, Goines, Nance, Ware and Young as defendants.

This leaves Garbs and Romero. Although these defendants cannot recall receiving letters from Rose, the court takes Rose's facts that are supported by evidence as true on summary judgment. A trier of fact could reasonably find that Rose's letters, such as his letter to Romero, were sufficiently specific to make these defendants aware that Rose believed Shufford posed a serious harm to him. *See Reed*, 178 F.3d at 854 (holding the plaintiff-prisoner's letters, which described the prison authorities' withholding food and medication from him, were sufficient to place the defendants-correctional staff on notice). Moreover, with respect to Garbs, like the defendants in *Haley*, 86 F.3d at 642, he personally witnessed a verbal altercation between Rose and Shufford. As such, there is a genuine issue of material fact whether Rose placed Garbs and Romero on notice.

"A prison official, put on notice of a constitutional violation by a prisoner's communication, may or may not be potentially liable, depending upon whether, among other things, the official had responsibility for correcting the problem, had authority to correct it, or reasonably relied on someone else to do so[.]" *Holman* v. *Gillen*, No. 00 C 833, 2002 WL 276147, at *5 (N.D. Ill. Feb. 27, 2002), citing *Reed*, 178 F.3d at 854, and *Vance* v. *Peters*,

97 F.3d 987, 993 (7th Cir. 1998) ("a prison official's knowledge of prison conditions learned from an inmate's communications can, under some circumstances, constitute sufficient knowledge of the conditions to require the officer to exercise his or her authority and to take the needed action to investigate, and if necessary, to rectify the offending condition."). Garbs had the authority to separate the inmates or, at the very least, to notify a superior official to address the situation but failed to do so. Romero also had the authority to separate the inmates or inquire of subordinates why Garbs was non-responsive to Rose's complaints when Rose indicated in his letter that Garbs witnessed Shufford's threats. A trier of fact could reasonably find that Garbs and Romero, by not responding to Rose's complaints and requests to transfer to another cell, acted with deliberate indifference towards Rose's health and safety. Therefore, the court will deny the motion with respect to defendants Garbs and Romero.

## ORDER

For the reasons set forth above, the court grants in part and denies in part defendants' motion for summary judgment [#66]. The court dismisses Burkes, Davis, Goines, Nance, Ware and Young as defendants. The case shall proceed against Garbs and Romero only. This case will be called for a status on March 13, 2003 at 9:30 a.m.

ENTER:

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 26, 2003

14